[Civ. No. 8861. Third Dist. Nov. 8, 1955.]

FERN D. FOSTER et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Timothy W. O'Brien and Burke & Rawles for Petitioners.

Everett A. Corten, Daniel C. Murphy and T. Groezinger for Respondents.

SCHOTTKY, J.—This is a proceeding to review the findings of the Industrial Accident Commission that the death of Leaton G. Foster did not arise out of and in the course of his employment and the consequent order denying benefits to petitioners.

The facts, which are not in substantial dispute, may be summarized as follows:

The decedent, Leaton G. Foster, was a lead mechanic working for the Division of Highways at Camp 39 in Modoc County. He died of myocardial infarction due to coronary occlusion on January 9, 1954.

During the month of December, 1953, and up to date of death the decedent had worked consistently overtime, part of this evidently due to the absence of his co-mechanic, Mr. Wallace, for the first 13 days of December. The work from December to date of death was described by Mr. Wallace as routine. There was no rush work. Mr. Wallace performed most or all of the heavy and outside work. Decedent had a prior back injury and had to avoid heavy lifting. The maintenance shop had proper mechanical equipment available for the handling of heavy loads. Extra help was available if needed but none was requested by decedent. Nowhere in the evidence is there an indication that the decedent was under any emotional or physical strain. There is no evidence of strain or exertion just prior to his death.

On January 9, 1954, the only work to be performed in the shop was the replacement of tracks on a caterpillar. This was being done by Mr. Wallace.

On the morning of January 9, 1954, the decedent arose at his usual time, ate his usual breakfast, his outward appearances were normal, he had no complaints. He went to the shop office adjoining the maintenance shop, arriving before the usual starting time of 7:30 a. m. He was engaged in paper work at his desk when Mr. Wallace arrived at 7:20 a. m. A conversation ensued between the decedent and Mr. Wallace. Decedent did not show any outward signs of distress, he did not complain of physical distress.

At 7:30 a. m. Mr. Wallace began work on the caterpillar, leaving decedent in the office with the paper work. Mr. Wallace recalls that while under the caterpillar he heard someone at the welding bench and heard sounds similar to those made in preparing a welding torch. These sounds were of only a few minutes' duration. A short while later he thought he heard his name called. After another interval he heard his name called and went into the office. He found the decedent in the office reclining on a seat used as a couch. Overalls were on the floor at one end of the couch, crumpled as if they had just been stepped out of. The decedent was in obvious distress and was taken to his house, which is at the camp, then to the hospital, where he died that same day.

There was no medical history of a heart condition but the report of Dr. Salvatore Lucia who had treated decedent on several occasions over a period of years stated: ''It is my candid opinion that the work in which Mr. Foster engaged and the circumstances under which it was consummated directly contributed to his demise, as is clearly shown by the details of his last illness.''

 Dr. Charles Wallace, a doctor who was not acquainted with decedent made a report based upon the study of the testimony and of certain documents submitted to him which described decedent's final illness and the duties of his employment. This physician's report concluded with the statement:

''In my opinion, there is no shred of evidence that his job was in any way responsible for his death. In the first place, his kind of work can not be said to contribute to the fundamental disease, coronary arteriosclerosis. Nor could the back injury have caused or even aggravated such an abnormality. Secondly, assuming that he had coronary arteriosclerosis, there is nothing to support the thesis that his work precipitated the fatal attack or coronary occlusion. There are instances when unusual and extraordinary physical activity or

severe and exceedingly upsetting emotional upheaval may be said to precipitate occlusion of previously diseased arteries, but certainly neither situation was evident here.''

It is apparent that the medical evidence is in sharp conflict and petitioners seek to overcome this by contending that the referee did not give proper consideration to the report of Dr. Lucia who was more familiar with the physical condition of decedent than was Dr. Wallace. They argue that the evidence clearly establishes that the decedent's death did arise out of and did occur in the course of decedent's employment, and that the medical evidence of Dr. Lucia substantiates the proposition that the type of work and the prolonged working hours required of the decedent were the precipitating factors which brought on the heart attack which resulted in his death.

While petitioner's arguments are persuasive and the evidence of Dr. Lucia would no doubt have sustained a compensable award if the referee and the commission had accepted it, the rejection of it and the acceptance of a contrary opinion from another expert is not ground for reversal by an appellate court. ▉ For as stated in *Nielsen* v. *Industrial Acc. Com.*, 220 Cal. 118, at page 123 [29 P.2d 852, 30 P.2d 995] : ''The opinion of experts based on hypothetical statements of the facts in the record is competent evidence. The weight of such evidence is for the commission's determination.''

The referee in recommending that the petition for reconsideration be denied stated:

''In view of the evidence presented, which in the opinion of this Referee did not establish that applicant was doing more than a minimum amount of work, namely, paper work, on the date of his death, January 9, 1954, it is felt that the applicants did not establish that the decedent sustained a disabling heart condition as a result of his employment such as would entitle them to an award of death benefits. There is no definite showing that the decedent had performed work in the shop on the date of his attack. As a matter of fact, the direct testimony by Mr. William W. Wallace was to the effect that *he* was performing the only actual work being conducted in the shop on that day. The only possible inference that decedent had done any mechanical work on January 9, 1954, would be based upon the statement of Mr. Wallace that he heard sounds in the shop which continued for a few minutes and believed that the same had emanated from the welding bench located in the maintenance shop; that the

sounds were similar to those made by a person preparing a torch. Other than the noise heard by the witness, the decedent was stated to have called to the witness and had been found in the office of the shop at about 8:00 A. M., or an hour and a half after the start of the work day.

"It is true there is a conflict in the medical reports as to the cause of death. In the opinion of this Referee the medical report of Dr. Wallace is the most reasonable medical opinion in view of the testimony concerning the activities of the decedent on January 9, 1954."

It is well established that "if there is any evidence, whether direct or by reasonable inference, which will support the finding of the commission, a reviewing court has no power to disturb it. (*Mercer-Fraser Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 102, 114 [251 P.2d 955].) ▪ The function of the court on review of the action of the commission is to determine whether the evidence, if believed, is substantial and supports the findings." (*Industrial Indem. Co.* v. *Industrial Acc. Com.,* 115 Cal.App.2d 684, 692 [252 P.2d 649].) ▪ We are satisfied that there is substantial evidence to support the findings and conclusion of respondent commission that the death of Leaton G. Foster did not arise out of or occur in the course of his employment.

The order denying an award is affirmed.

Van Dyke, P. J., and Peek, J., concurred.