[Civ. No. 917.    Fifth Dist.    Sept. 6, 1968.]

ROSE E. BUESCHER, Petitioner, v. WORKMEN'S COM-
PENSATION APPEALS BOARD, STATE DEPART-
MENT OF CONSERVATION et al., Respondents.

Robert Stevenson for Petitioner.

Thomas C. Lynch, Attorney General, William J. Power, Deputy Attorney General, Everett A. Corten, Selma Mikels, T. Groezinger, Loton Wells and A. C. Jones for Respondents.

GARGANO, J.—Petitioner, Rose E. Buescher seeks to review a decision of the Workmen's Compensation Appeals Board (hereafter referred to as the board), denying petitioner a death benefit under the Workmen's Compensation Law and a pension under the Public Employees' Retirement Law.

Petitioner is the surviving widow of Henry J. Buescher, who died June 15, 1965, as a result of a heart attack. At the time of his death decedent had been employed as a maintenance foreman for the Department of Conservation of the State of California for a period of 15 years. His duties were to maintain in operating condition some 200 units of the Division of Forestry firefighting equipment and to be present at all fires in his district for that purpose.

On August 5, 1965, petitioner filed an application with the board for the payment of a death benefit, a burial allowance and for "other appropriate benefits, pursuant to Workmen's Compensation Law." The application was designated as case

No. 65 F 14762 and named the State of California, Department of Conservation, and the State Compensation Insurance Fund as defendants. Subsequently, however, the State Compensation Insurance Fund was dismissed from the action as a party defendant.

On March 15, 1966, the State Employees' Retirement System (now the Public Employes' Retirement System and hereafter referred to as the Retirement System), wrote to the board asking to be joined in the action as a defendant in order that its liability to pay a special death benefit under the State Public Employees' Retirement System be determined pursuant to Government Code section 21363.5.[1] Accordingly, on March 16, 1966, the board joined the Retirement System in case No. 65 F 14762 as a party defendant. The board also opened a separate file on the Retirement System's application and assigned it a new case number, case No. 67 F 17485. Subsequently, separate notices of the time and place of hearing before the referee were set in each case. However, the initial file (case No. 65 F 14762) was designated as the master file.

On April 14, 1967, the Retirement System informed the board that it was not going to be represented at the hearing and that it would accept, as its own defense, the defense presented by the State Compensation Insurance Fund on behalf of decedent's employer, the Department of Conservation. The Retirement System also stipulated that ". . . the record established in the case under the Labor Code, including all testimony given and documents filed, shall be considered as applying to the Retirement System's application."

The hearing before the referee on both cases was held on May 11, 1967.[2] Dr. Eliot Sorsky and petitioner testified for the petitioner, and Dr. William L. Adams, Jr., testified for defendants. In addition, the written medical reports of both doctors were received in evidence. Dr. Sorsky was of the opinion that decedent's death was service-connected. Dr. Adams opined to the contrary.

On June 30, 1967, the referee awarded petitioner a death benefit on her workmen's compensation claim against dece-

---

[1] This section provides: "The special death benefit is also payable if the deceased was a forestry member if his death was industrial, as determined by the Industrial Accident Commission using the same procedure as in workmen's compensation hearings and if there is a wife or child who qualifies under subdivision (b), Section 21364."

[2] The referee consolidated both cases for hearing. He also noted in his minutes that the Retirement System was to accept the defense presented by the State Compensation Insurance Fund and that the record established in that case would apply to it.

dent's employer, the Department of Conservation. The pertinent finding was that Henry J. Buescher ". . . sustained injury arising out of and occurring in the course of his employment proximately resulting in his death on June 15, 1965." On the same day the referee made an essentially similar finding on petitioner's claim for a special death benefit under the Public Employees' Retirement Law.

On July 7, 1967, the Retirement System informed petitioner that she would receive a monthly allowance of $346.51 (the special death benefit) for the balance of her lifetime or until remarriage, but reduced by any social security benefits petitioner might be entitled to in the future. However, almost two weeks later, on July 18, 1967, Thomas J. Marren, the attorney for State Compensation Insurance Fund, petitioned the board for reconsideration. The first page of the petition contained both case numbers and the names of both defendants. It was also signed "Thomas J. Marren, Attorney for Defendants." But the body of the petition did not state with specificity that the petition was brought on behalf of the Retirement System. It merely said:

"Comes now the STATE COMPENSATION INSURANCE FUND, adjusting agent for the State of California, Department of Conservation . . ."

On August 18, 1967, the board issued its "Opinion and Order Granting Reconsideration and Decision After Reconsideration." In this decision the board, after mentioning both cases by number and title, annulled the referee's award of a death benefit under the Workmen's Compensation Law and substituted its own finding of fact as to the cause of decedent's death; the board found that decedent's death was not industrial and hence that petitioner was not entitled to a death benefit under the Workmen's Compensation Law or to a special death benefit under the Public Employees' Retirement Law. The board expressed its opinion as follows:

"We have carefully reviewed the entire record including the testimony and medical reports of Dr. E. Sorsky, dated November 4, 1966 and March 28, 1967 and the testimony and medical report of Dr. William L. Adams, Jr., dated June 1, 1966.

"The record reveals that decedent worked as maintenance foreman for approximately 15 years and although the work entailed considerable overtime it was not particularly stressful or frustrating. Applicant, decedent's widow testified that her husband's doctor was Edwin P. Brauner, M.D., an internist. Dr. Brauner had never taken an electrocardiogram of

the decedent and there was apparently no prior impression of heart trouble before his death.

"The medical evidence in this case is conflicting. Dr. Adams testified that decedent died of coronary artery disease, coronary sclerosis, and arteriosclerotic heart disease. In Dr. Adams' opinion, the decedent's work did not cause or hasten his death. We are of the opinion that the testimony and report of Dr. Adams is more persuasive than the testimony and reports of Dr. Sorsky. The Board's power to choose between conflicting medical reports is too well settled to require further comment. (See *Foster* v. *I.A.C.* 20 CCC 276.)

"We find therefore that the decedent did not sustain an injury arising out of or in the course of his employment."

On September 7, 1967, petitioner petitioned the board for reconsideration. She alleged, inter alia, that the Retirement System had not asked for reconsideration and therefore was bound by the referee's finding that decedent's death was industrial. Petitioner also raised the applicability of the presumption established by section 3212 of the Labor Code. This section provides:

"In the case of . . . active firefighting members of the Division of Forestry of the State Department of Natural Resources whose duties require firefighting . . . the term 'injury' includes . . . heart trouble which develops or manifests itself during a period while such member is in the service of such . . . unit. . . .

"Such . . . heart trouble . . . so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it.

"Such . . . heart trouble . . . so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation."

On November 6, 1967, the board denied petitioner's Petition for Reconsideration. The board made no express finding as to whether the petitioner was entitled to the benefit of the presumption established by Labor Code section 3212. It stated, however, "[e]ven if Labor Code Section 3212 were considered to be applicable the presumption established by 3212 is controverted by the evidence of the record." With regard to petitioner's contention that the Retirement System was bound by the referee's decision, the board stated: "The parties entered

into a stipulation at the time of the hearing before the referee that the record established in the case under the Labor Code, including all testimony given and documents filed, should be considered as applying to the Retirement System's application. The Petition for Reconsideration of the State Compensation Insurance Fund listed both case numbers and stated that reconsideration was sought in both cases. The referee's report on reconsideration also stated that the petition in both cases should be denied. The stipulation was binding on both parties and the decision of the Board binding on the State Retirement Board as well as the Department of Conservation.''

Petitioner raises four main contentions for annulment of the board's decision: that the board exceeded its jurisdiction when it found that decedent's death was not industrial as to petitioner's claim for a death benefit under the Public Employees' Retirement Law; that the Retirement System acquiesced in the referee's decision and is estopped from claiming otherwise; that the evidence is not sufficient to sustain the board's decision; that the board's findings of fact are fatally defective.

■ 1) Petitioner's first attack does not reach the merits of the board's decision. She argues that the Retirement System did not request reconsideration, either directly or indirectly, because the Petition for Reconsideration which was presented by the State Compensation Insurance Fund did not mention the Retirement System nor did it state that it was brought on the Retirement System's behalf. Accordingly, petitioner concludes that the board exceeded its jurisdiction when it found that petitioner's husband's death was not industrial and that petitioner was not entitled to a special death benefit under the Public Employees' Retirement Law.

Petitioner's argument is not persuasive. First, the Retirement System's letter stating that it was not going to be represented at the hearing was addressed to the board, not to the referee. Consequently, when the Retirement System informed the board that it was going to accept, as its own defense, the defense presented by the State Compensation Insurance Fund on behalf of the Department of Conservation, it was obviously referring to every defensive measure presented by that agency at every stage of the proceeding. Moreover, the letter also stated that "all testimony given and documents filed" applied to "the Retirement System's application." This statement was in essence a stipulation that the Retirement System considered itself bound by any document presented by the State Compensation Insurance Fund in furtherance of its de-

fense against petitioner's claim for a death benefit under the Workmen's Compensation Law, and this would by necessity include a petition for reconsideration. If anything, it would be incongruous (and even absurd) to believe that the Retirement System intended to rely on the defense presented by the State Compensation Insurance Fund to the referee, a subordinate adjunct of the board, although he was not even mentioned in its letter, but did not intend to be bound by any additional action taken by the State Compensation Insurance Fund before the very board to which the Reitrement System had written and which had the final decision.

Second, the mere fact that the Retirement System was not named in the body of the petition is not controlling. For that matter, the body of the petition did not mention either defendant (the Department of Conservation or the Retirement System) nor did it expressly state on whose behalf the petition was presented. Yet petitioner does not assert that the petition was not at least brought on behalf of the Department of Conservation. Significantly, however, the petition contained the case numbers of both cases and was signed "Thomas J. Marren, Attorney for Defendants." Thus, it is reasonably apparent that when Mr. Marren stated "[c]omes now the STATE COMPENSATION INSURANCE FUND, adjusting agent for the State of California, Department of Conservation . . ." he was referring to the capacity in which the State Compensation Insurance Fund was acting and not necessarily on whose behalf the petition was brought.

Third, petitioner's argument loses sight of the fact that the Retirement System, like the Department of Conservation, is itself a subordinate state agency and was a defendant in the proceeding in name only. In fact, under Government Code section 21363.5 the sole responsibility for determining whether decedent's death was industrial, and hence whether petitioner was entitled to a special benefit, is delegated to the board. Consequently, the board not only had jurisdiction to grant reconsideration on its own motion under Labor Code section 5900, subdivision (b),[3] but it was under a special statutory mandate to do so if, in the light of the evidence adduced at the hearing, it disagreed with the referee's finding that decedent's death was industrial.

[3]Labor Code section 5900, subdivision (b) provides: "At any time within 60 days after the filing of an order, decision, or award made by a referee and the accompanying report, the appeals board may, on its own motion, grant reconsideration."

Fourth, the basis for granting a special death benefit under the Public Employees' Retirement Law is the same as that for the granting of a death benefit under the Workmen's Compensation Law. It stands to reason that the board, on its own motion, would have granted reconsideration on petitioner's claim for a special death benefit under the Retirement Law when it granted reconsideration on petitioner's claim for a death benefit under the Workmen's Compensation Law. Manifestly, it must be deemed that the board did so in the instant case; otherwise, the board's decision annulling the workmen's compensation award would create a legal paradox.

■ 2) Petitioner's next contention is in the nature of an estoppel. She argues that when the Retirement System wrote to her after the referee's decision and informed her that she was going to continue to receive pension payments until her death or remarriage, it acquiesced in the decision of the referee and became bound by that decision. She also asserts that she was misled by the Retirement System's letter and hence did not oppose the Petition for Reconsideration.

Petitioner's arguments lack substance. As we have stated, the responsibility of determining whether a state employee is entitled to a special death benefit under the Public Employees' Retirement Law is vested in the board, not the Retirement System. Consequently, even if we should assume that the Retirement System acquiesced in the referee's decision, its acquiescence was not binding on the board.

Moreover, as to petitioner's argument that she was misled, the Petition for Reconsideration contained both case numbers and was signed by Mr. Marren as attorney for the defendants. And, significantly, the referee's report and recommendation (a copy of which was served on petitioner's attorney) recommended that the board deny reconsideration in both cases. Thus, petitioner was alerted to the possibility that the board was considering reconsideration in both cases. Yet she made no objection on the ground that the Retirement System had not requested reconsideration. In any event, even if it is assumed that petitioner was misled by the Retirement System's letter, there is nothing in the record to indicate that she was prejudiced, and a showing of prejudice is an essential element to an estoppel. On the contrary, petitioner presented her arguments in opposition to the board's decision granting reconsideration when she filed her own Petition for Reconsideration. According to the record, these arguments were considered, albeit rejected by the board at that time.

3) Petitioner's third contention attacks the board's decision on the merits. She maintains that although there was ample evidence to support the referee's finding that Mr. Buescher's heart attack was industrial, the evidence was insufficient to support the board's opposite conclusion. In short, while conceding that Dr. Adams is "a very fine doctor" petitioner argues that his opinion, upon which the board relied, had no validity because it was based on a false or fanciful premise that decedent's work was not particularly stressful, and in any event this determination was a legal or factual one which should have been made by the board, not a medical one to be made by the doctor.

Under Labor Code section 5907 the board can annul the findings and award of the referee and substitute its own findings and decision in light of all of the evidence in the record. And in doing so the board may "choose among conflicting medical reports those which it deems most persuasive" *Jones* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 476, 478 [67 Cal.Rptr. 544, 439 P.2d 648] ; *Foster* v. *Industrial Acc. Com.*, 136 Cal.App.2d 812, 815-816 [289 P.2d 253].)

Moreover, on review conflicts in the evidence must be resolved in favor of the board's findings and its factual determinations (though contrary to the referee's) cannot be disturbed unless they are not supported by substantial evidence (*Jones* v. *Workmen's Comp. App. Bd., supra*; *Rogers Materials Co.* v. *Industrial Acc. Com.*, 63 Cal.2d 717, 721 [48 Cal. Rptr. 129, 408 P.2d 737]).

With these principles in mind, we conclude that petitioner's contention is without substantial merit. Dr. Adams testified that decedent's death was not attributable to his work and was caused by generalized arteriosclerosis brought about by dietary, hereditary and environmental factors. His opinion was based on the autopsy report, decedent's medical history, the nature of decedent's employment and the nature of decedent's complaints and symptoms as disclosed by the evidence. Moreover, the doctor's opinion was not predicated on a false premise. Dr. Adams did not state that decedent's work was free from stress or that decedent did not experience some stress on the job. He merely testified that after considering all of the evidence (including the testimony of the petitioner), he did not believe that decedent's job was unusual or that the stress which decedent experienced on the job caused or substantially contributed to decedent's heart attack.

Admittedly, petitioner's assertion that stress is quite often

a contributing factor to a heart attack is supported by the consensus of medical opinion. However, the kind as well as the degree of stress required to substantially contribute to a heart attack is a medical, not a legal, conclusion. And, significantly, the doctor did not completely discount the stress of decedent's work as a possible contributory factor to decedent's death. The doctor stated: "The problem of stress is one which has been written a great deal about and stressful sensations, particularly emotional stress have been thought in the presence of other factors thought to be a mild aggravating factor. We see this in the type of individual who is a chronic worrier, who is worrying about his job, his position, whether he is on the verge of being fired because he is not doing the job right. He doesn't like his job and in addition to this frequently has other so-called environmental or family problems which are superimposed producing other worries. Specifically here the stressful situations do not appear to be greater at least in my experimentation of them. The job was a job which many people do. It wasn't any unusual type of job in the sense that every man who did this job is not going to die from coronary sclerosis or arteriosclerosis I am quite sure. I am quite sure also that there would be other men that could take this quite easily and take it in stride. This particular individual had other factors involved on it and he had difficulty. I don't think we can sit up here and say his job had absolutely nothing to do with it or can I say here that his job did have a lot to do with it. I think we have to recognize that this is just one of many man factors involved and to me the amount of stress and strain shown in the testimony that I listened to today I do not feel was excessive for the type of position that he was in." However, later when the doctor was asked if work frustration had contributed to or aggravated decedent's heart condition he added: "I would expect if he had been so frustrated with his job that it was really bothering him a lot that he would have had other medical symptoms, that he would have complained to his wife of nervousness, that he just couldn't do the job, that he was going to have to do something else. He was going to have to go somewhere else or he was going to have some medical help. I would suspect in the presence of the amount of coronary sclerosis that we have shown in the autopsy that if he had been a severely frustrated individual and under a lot of tension that he would have had some degree of anginal pain or digestive disturbance." And in his letter to the State Compensation Insurance Fund which

was admitted into evidence, the doctor said: "I do not believe that there is any significant relationship between the so-called frustration by his work and his heart disease. If this had been severe, this patient would have developed anginal pain and would have complained considerably more about his chest at the times he was having this frustration and he would undoubtedly have sought medical aid prior to the time that he did. His death apparently occurred while sitting on the patio of his home between 8:30 and 9 p.m. on 6-15-65 while his last activity as far as his work was concerned was at 13.53 hours on the same date, approximately 2 p.m.

"From the information submitted it would be our opinion that this man's employment was not the cause of his death but that his death was due to arteriosclerotic heart disease with marked coronary arteriosclerosis and probably superimposed hypertension. This is a result over a long period of time of dietary, hereditary and environmental factors which may or may not be associated with stressful conditions."

The leading case of *Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 P.2d 142], relied upon by the petitioner, is distinguishable. In that case the employee's doctors testified that she had injured an ovarian tumor in a fall sustained during her employment. At the hearing the employer's medical witnesses also admitted that the fall could have twisted the pedical of the tumor causing the injury of which the employee complained. They opined that the employee's condition was not related to her fall under the assumption that she had not experienced pain or complained of any symptoms immediately after the fall. However, according to the uncontradicted evidence, the employee felt ill "right along after the fall" and had intermittent abdominal pain between the time of the fall and the time that she quit work. Under these circumstances the Supreme Court held that there was no actual conflict in the medical testimony and annulled the commission's order denying compensation.

4) Petitioner's final bifurcated contention has merit. First, she asserts that the board failed to make an essential finding of fact; the board made no finding as to whether petitioner's husband was an active firefighting member of the Division of Forestry entitled to the benefit of the presumption of Labor Code section 3212. Second, petitioner cites Labor Code section 5908.5[4] and maintains that there is no way of telling what

---

[4]Labor Code section 5908.5 provides: "Any decision of the appeals board granting or denying a petition for reconsideration or affirming,

evidence the board relied upon when it stated ''[e]ven if Labor Code Section 3212 were considered to be applicable the presumption established by 3212 is controverted by the evidence of the record.''

▌ According to the uncontradicted evidence, decedent was required to be present at all fires in his district, and, like an active firefighting member of the Division of Forestry, was on 24-hour call during the fire season. It is therefore arguable that while working at or near the fire line decedent was exposed to most of the hazards obviously visualized by the Legislature (long tiring hours, smoke, fumes and similar hazards) when it specified that the presumption of Labor Code section 3212 is applicable only to ''active firefighting members of the Division of Forestry . . . whose duties require firefighting.'' Moreover, decedent was required to be present at the fires in order to maintain, in operating condition, the firefighting equipment which was being used by the Division of Forestry to combat the fires. And, in this sense at least, he was actively engaged in firefighting. In other words, it is also arguable that decedent was actively engaged in firefighting in the broad or general sense of the term. Consequently, petitioner was entitled to have all of the facts and circumstances of her husband's employment carefully weighed by the board and to a finding (one way or the other) as to whether decedent was an active firefighting member of the Division of Forestry within the ambit of Labor Code section 3212.

In an attempt to justify the board's failure to find on the issue as to whether decedent was an active firefighter, respondents' counsel assert that the finding, if made, would have been against the petitioner. They argue that the term ''fight'' as defined by the lexicographers means ''to attempt to defeat, subdue or destroy an enemy.'' Accordingly, counsel argue ''[a] *firefighter attempts to subdue the fire. Decedent's job was to cure or relieve whatever ailed the machinery used by the firefighters. While he was often, when a fire was on, at the site of a fire, he was not exposed to it in the same manner that a firefighter was.*'' These arguments are merely attempts on the part of counsel to make findings of fact which should have been made by the board, and if anything they emphasize the board's fatal omission. Manifestly, petitioner is entitled

rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a referee and shall be in writing, signed by a majority of the appeals board members assigned thereto, and shall state the evidence relied upon and specify in detail the reasons for the decision.''

to have the board, rather than respondents' attorneys, make these determinations.

Respondents next assert that in any event the board's failure to find on the issue as to whether decedent was an active firefighter was not critical in this case. They point to the fact that the board stated that even if the presumption was applicable, it was controverted by "the evidence of the record." In other words, respondents suggest that it would serve no useful purpose for this court to remand the cause back to the board to make a finding which would not alter its decision.

We would be naturally reluctant to remand a cause to the board for further consideration if it were absolutely clear that no useful purpose would be served. We are impelled to do so, however, for we are not convinced that this would be the case. Dr. Sorsky was of the emphatic opinion that decedent's heart condition "and demise was aggravated by the stress and strain of his work and his demise was probably brought about prematurely by this stress and strain." Moreover, although Dr. Adams' opinion was to the contrary, he allowed for the possibility that the stress and strain experienced by decedent on the job could have contributed to his death.[5] In fact, when the doctor opined that the job was not unusual and "there would be other men that could . . . take it in stride," he also suggested that some men, such as chronic worriers or men with other disabilities, might not be able to do so. ▇ It is settled, under the Workmen's Compensation Law, that as to a pre-existing physical condition, industry takes an employee as it finds him (*Berry* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 786, 793 [69 Cal.Rptr. 68, 441 P.2d 908]; *Zemke* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928]). And this should be particularly true as to a heart attack in view of the last sentence of Labor Code section 3212 which reads: "Such . . . heart trouble . . . so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation."

▇ It is of course true that when Dr. Adams suggested that some men, such as chronic worriers or men with other disabilities, might not be able to cope with decedent's job, he was speaking in generalities. Later the doctor rather emphati-

---

[5]The doctor stated: "I don't think we can sit up here and say his job had absolutely nothing to do with it or can I say here that his job did have a lot to do with it."

cally stated that there was no significant relationship between the frustration of decedent's work and his heart disease because certain essential medical symptoms were lacking (see excerpts from the doctor's testimony *ante*). However, even so, the doctor entertained some doubt as to the accuracy of his diagnosis, and although this doubt goes to the weight (not to the validity) of his opinion, it is manifest that when the medical testimony is carefully analyzed the existence of the presumption established by section 3212, albeit rebuttable, might well have been the critical factor in the board's decision had the board unequivocally found that it was applicable in this case. In any event, the petitioner was legally and morally entitled to such careful determination, not merely to a casual observation that the presumption was rebutted even if it was deemed applicable.

Respondents' final contention that the applicability of the presumption was not timely raised by petitioner is devoid of merit and no further comment is necessary.

The board's Order Granting Reconsideration and Decision After Reconsideration is hereby annulled and the cause is remanded to the board for further proceedings in order to conform to the views expressed herein.

Conley, P. J., and Stone, J., concurred.