[Civ. No. 10713. Fourth Dist., Div. Two. July 22, 1971.]

JACK L. BAKER, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
CONSOLIDATED FIRE PROTECTION DISTRICT OF
LOS ANGELES COUNTY et al., Respondents.

**COUNSEL**

Louis R. Stein for Petitioner.

Rupert A. Pedrin, Lionel K. Hvolboll and Philip M. Miyamoto for Respondents.

**OPINION**

**TAMURA, J.**—Petitioner has been a full time fireman with the Consolidated Fire Protection District (District) of the County of Los Angeles for

26 years.[1] In 1953, after several hours of exposure to acrid fumes and smoke while fighting a rubber fire, petitioner complained of severe chest pains, shortness of breath and expectoration of blood and mucous. Thereafter those symptoms recurred with progressive intensity and frequency. In June 1968 he complained his condition had become so disabling that he was no longer able to work. Based upon petitioner's testimony and numerous medical reports the referee found that petitioner was suffering from cardiovascular disease attributable to his employment and awarded permanent disability benefits. On re-reconsideration the board found that petitioner did not have heart trouble or an industrially caused pulmonary disease, did not sustain an industrial injury and entered its decision denying compensation. Petitioner seeks review and annulment of the decision contending that the board's findings are not supported by substantial evidence in the light of the whole record.

We have concluded that the board's finding that petitioner did not have heart disease or a disabling pulmonary disorder is supported by substantial evidence but that the finding that petitioner did not sustain an industrial injury lacks evidentiary support. We have therefore concluded that the board's decision must be annulled and the matter remanded for further proceedings.

The evidence before the referee may be summarized as follows:

Petitioner began his employment with the District in 1942. He passed the requisite physical examination and was found to be in good health; he had no chest or heart problem. During his tenure he was assigned to stations in the Los Angeles metropolitan area. His duties exposed him to smoke and fumes from all types of industrial fires including oil, chemical, rubber, paint and plastic fires.[2] In 1953, following exposure for several hours to smoke and fumes fighting a rubber fire, he complained of severe chest pains, shortness of breath and expectoration of blood and was placed on off-duty status for 30 days. Thereafter those symptoms recurred with increasing intensity and frequency. He underwent numerous tests but doctors were unable to diagnose the etiology of his complaints as being of organic origin. Laboratory tests and electrocardiograms failed to reveal any objective evidence of heart or artery disease. On one occasion he was hospitalized for pneumonia for which he received disability indemnity but subsequent tests failed to reveal any residual pulmonary disorder other than

---

[1]Petitioner was promoted to captain in 1951 and served in that capacity continuously thereafter. His duties as captain subjected him to the same work exposures faced by firemen.

[2]Petitioner's testimony concerning the exposures was corroborated by official "minor injury or exposure reports" maintained by the Consolidated Fire Protection District.

a chronic, mild, nondisabling bronchiectasis. During one hospitalization in 1964, nitroglycerin was prescribed for his chest pains. He has been taking nitroglycerin ever since in varying quantities to relieve attacks of chest pains.

In 1967, petitioner was transferred to a forestry station involving less activity. However, his complaints continued. In June 1968, after fighting a large bush fire, he complained of a severe recurrence of the symptoms of heart trouble, was hospitalized for eight days and kept on off-duty status until August 1968. At the request of respondent State Compensation Insurance Fund (State Fund) he was examined at Loma Linda Medical Center where he underwent a series of laboratory tests. Dr. Jutzy, the examining doctor, reported he found no evidence of cardiovascular disease or pulmonary disorder other than the mild bronchiectasis and concluded that petitioner had developed "cardiac neurosis." In his opinion there was no "physical" reason why petitioner should not be able to return to work. Petitioner nevertheless claimed he was so disabled that he was unable to work and has not worked since June 1968. He complains of recurring attacks of severe chest pains radiating to his arms and at times to his rectum, shortness of breath, intermittent expectoration of blood and mucous, and cyanosis. In January 1969, petitioner filed an application for adjudication of his claim based upon an alleged industrial injury to his "heart, chest and lungs."

Petitioner's expert, Dr. Frank, initially reported that X-rays and electrocardiograms showed petitioner's lungs to be clear and his heart to be normal but on the basis of petitioner's complaints made a tentative diagnosis, subject to an examination of petitioner's medical file, of "probable heart disease with coronary artery insufficiency and angina." After examining other medical reports, Dr. Frank ruled out cardiovascular disease as the cause of petitioner's complaints and concluded that his problem was primarily of "emotional origin," that his frequent encounter with dangerous situations in the course of his employment, the frightening symptoms he experienced after his exposure to smoke and fumes in the 1953 rubber fire, and his knowledge that many of his coworkers were afflicted with heart disease caused him to develop "cardiac neurosis." Later after studying the results of pulmonary and blood gas analysis studies performed at the Good Samaritan Hospital in Los Angeles, Dr. Frank further modified his opinion. He reported that those studies caused him to believe petitioner was suffering from "coronary artery sclerosis with coronary artery insufficiency and angina" as well as neurosis. It was his opinion that petitioner not be exposed to smoke or fumes and should restrict himself to sedentary work.

Respondents' medical experts reported that tests and examinations revealed no evidence of heart disease. Dr. Lee, the independent medical examiner appointed by the referee, had petitioner undergo a series of pulmonary and cardiac tests at the White Memorial Hospital in Los Angeles. He reported he found no evidence of cardiovascular disease or significant impairment of pulmonary function.

On behalf of the State Fund, petitioner was examined by Dr. Madlem for a psychiatric evaluation. Dr. Madlem found no evidence of "organic brain syndrome." But his psychiatric evaluation was equivocal. He stated that petitioner undoubtedly had some emotional problems as a result of his stressful experience and preoccupation with heart disease but that they did not produce any "syndrome" that impaired his interpersonal relationships. While conceding that Dr. Frank and Dr. Jutzy "may be correct" in their diagnosis of "cardiac neurosis," Dr. Madlem characterized their opinions as "psychiatric diagnosis by exclusion" and "wastepaper diagnosis." Dr. Madlem concluded: "As far as this examiner is concerned, there exists no psychiatric entity that represents the Carrier's liability and apparently competent physicians in other specialties have likewise not been able to establish a diagnosis."

The referee found that petitioner developed heart disease in the course of his employment resulting in 81 percent permanent disability and awarded benefits accordingly.[3]

On respondents' petition the board granted reconsideration and, relying primarily upon the report of Dr. Lee, found that petitioner did not sustain an industrial injury and that "any condition of his heart and lung which applicant may have" was not caused by his employment. Petitioner sought and was granted reconsideration. This time the board found that petitioner did not sustain an industrial injury, did not have heart trouble, and that "any lung condition" he may have was not related to or caused by any injury sustained during the course of his employment.

Petitioner's main attack upon the board's decision is that there was no substantial evidence to support the finding that petitioner did not have heart disease.

From the analysis which follows, we have concluded: (1) there was substantial evidence that petitioner does not have heart trouble and the board's finding on that issue may not be disturbed; (2) resolution of that issue is not dispositive of petitioner's claim to compensation because on the overriding issue of industrial injury the only logical and reasonable

---

[3]Although the referee also found that petitioner had sustained an industrial injury to his lungs, he found it to be nondisabling and nonratable.

inference which can be drawn from the evidence is that petitioner sustained a disabling psychoneurotic injury in the course of his employment and, consequently, the board's finding that he did not sustain an industrial injury is unsupported by the evidence; and, (3) the board failed to observe the procedural requirements of Labor Code section 5908.5.[4]

## I

■ There is substantial evidentiary support for the board's finding that petitioner does not have "a heart condition." The medical experts all agreed that petitioner's complaints were symptomatic of heart trouble but, with the exception of Dr. Frank, they were unable to find any organic evidence of cardiovascular disease. Dr. Lee and Dr. Jutzy reported that, although it was unlikely in petitioner's case, normality of laboratory and exercise tests does not conclusively rule out the possibility of heart disease. Dr. Frank was initially of the same opinion as the others but modified his conclusion after examining the results of the pulmonary and blood gas analysis studies made at the Good Samaritan Hospital. Thus the record presented a conflict in the evidence. On the basis of petitioner's testimony and Dr. Frank's reports, the board could have found, as did the referee, that petitioner developed heart disease during his employment. ■ A competent opinion of a single physician is sufficient evidence to support a finding of industrial injury. (*U.S. Auto Stores* v. *Workmen's Comp. App. Bd.,* 4 Cal.3d 469, 475 [93 Cal.Rptr. 575, 482 P.2d 199]; *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 639 [83 Cal.Rptr. 208, 463 P.2d 432]; *Smith* v. *Workmen's Comp. App. Bd.,* 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822].) Thus had the board denied respondents' petition for reconsideration, we would not have been at liberty to disturb that decision. ■ However, the board is empowered to annul a referee's findings and substitute its own findings and decision in light of all the evidence in the record and in so doing may choose among conflicting competent medical opinions those which it deems most persuasive. (*Jones* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 476, 479 [67 Cal.Rptr. 544, 439 P.2d 648]; *Buescher* v. *Workmen's Comp. App. Bd.,* 265 Cal.App.2d 520, 529 [71 Cal.Rptr. 405].) ■ In the instant case a fair evaluation

---

[4]Labor Code section 5908.5 provides: "Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a referee and shall be in writing, signed by a majority of the appeals board members assigned thereto, and shall state the evidence relied upon and specify in detail the reasons for the decision.

"The requirements of this section shall in no way be construed so as to broaden the scope of judicial review as provided for in Article 2 (commencing with Section 5950) of this chapter."

of the evidence discloses substantial, solid medical evidentiary support for the board's finding that petitioner does not have heart disease. The reports upon which the board chose to rely were based upon extensive laboratory tests, examinations, and evaluation of petitioner's medical history.

Petitioner's reliance upon the presumption provided by Labor Code section 3212 to prove he had heart disease is misplaced. ■ The statutory presumption that a fireman's heart trouble is one which arose out of his employment does not become operative until it is first established that heart trouble developed or manifested itself during the period of service. (*Dennison* v. *Flintridge County Fire Protection Dist.*, 6 Cal.Comp.Cases 93.) The presumption is one of occupational causation; it is not a presumption that a disability is attributable to heart trouble.

## II

Although the board's finding on heart disease may not be disturbed, resolution of that issue is not determinative of petitioner's right to compensation. In light of the entire record the inference is inescapable that petitioner is suffering from a disabling injury attributable to his employment.

The record suggests only three possible alternatives: (1) petitioner is malingering, or (2) he has cardiovascular disease, or (3) he sustained a psychoneurotic injury.

There was no evidence that petitioner's complaints were feigned. The board did not so find. Petitioner's testimony concerning his complaints was uncontradicted and unimpeached. None of the many doctors who examined petitioner suggested that his complaints were not genuinely felt. While performing a treadmill exercise test at the White Memorial Hospital, petitioner lost consciousness and had to be administered oxygen and was given nitroglycerin. Dr. Madlem who made the psychiatric evaluation did not suggest that petitioner's complaints were contrived. Although respondents introduced motion pictures taken by its investigators showing petitioner doing light work in his yard, the referee noted that the episodes filmed were too brief to be of any significance and the activities depicted were entirely consistent with petitioner's testimony. The motion picture evidence thus would not have constituted substantial evidence to support a finding that petitioner had not incurred a permanent disability. (See *Redner* v. *Workmen's Comp. Appeals Bd.*, 5 Cal.3d 83, 96-97 [95 Cal.Rptr. 447, 485 P.2d 799].)

■ In the absence of evidence to the contrary, the referee and the board must assume the truth of petitioner's uncontradicted and unimpeached testimony respecting the genuineness of his complaints. (See *Place* v. *Work-*

*men's Comp. App. Bd.,* 3 Cal.3d 372, 379 [90 Cal.Rptr. 424, 475 P.2d 656].) Given the truth of petitioner's testimony, the board's finding that petitioner did not sustain an industrial injury cannot be reached by simply ruling out heart disease. The only reasonable inference which can be drawn from the evidence is that petitioner suffers from a form of psycho-neurotic injury which doctors termed "cardiac neurosis."

In his February 27, 1969, report Dr. Frank stated: "Furthermore I believe that most of Mr. Baker's complaints and disability stemming from those complaints are of emotional origin. I believe that his frequent exposure to dangerous situations which he has encountered in the course of his employment, the unpleasant and frightening symptoms that he has experienced as a result of his exposure to irritating dust, smoke and fumes, and his knowledge of many of his co-workers have been afflicted with heart ailments are factors that have over a period of years caused Mr. Baker to become extremely conscious of and frightened by the possibility of a cardiovascular ailment. In other words he has a cardiac neurosis. In Mr. Baker's case this has become a very disturbing and disabling situation and is one which I believe will prevent him from ever resuming his employment as a fireman. . . ." Dr. Kritzer, after concluding that petitioner's symptomology was not of organic origin, stated: "One is force [*sic*] therefore to assume that part of his complaints are on the basis of non-organic disability." Dr. Jutzy of the Loma Linda Medical Center reported: "I feel that it is unlikely that Mr. Baker has any significant heart disease at the present time. It would appear to me that Mr. Baker has developed a cardiac neurosis and he is overanxious regarding his symptoms." Dr. Walker of White Memorial Heart Institute reported in part: "It is my opinion that this patient has considerable anxiety tension and that when he is keyed up and worried about his heart or his other problems that he gets sufficient sympathetic discharge to maintain significant sinus tachy-cardia for a period of time."

Although Dr. Madlem purported to make a psychiatric evaluation of petitioner, his report was equivocal. He stated: "Undoubtedly Mr. Baker has some emotional problems. He has been subjected to considerable stressful experiences and fatigue and probably has suffered some lung damage. Consequently, he has become preoccupied with heart disease. However, this again is all subjective, cannot be documented, and has not produced any syndrome that has objectively impaired his capacity to relate to people. Unfortunately, when a case of this type ends up in the lap of the psychiatrist for a definitive diagnosis and a diagnosis cannot be made by the psychiatrist of an entity that can stand on its own feet, then I do not know where one goes from here." His characterization of Dr. Frank's diagnosis of cardiac neurosis as "wastepaper diagnosis" and his conclusion that "there exists

no psychiatric entity that represents the Carrier's liability . . ." can hardly be termed a medical diagnosis or opinion. ■ An expert's opinion which rests upon "surmise, speculation, conjecture or guess" or assumes an incorrect legal theory cannot constitute substantial evidence to support an order or decision. (*Redner* v. *Workmen's Comp. Appeals Bd., supra,* 5 Cal.3d 83, 96; *Place* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 372, 378; *Smith* v. *Workmen's Comp. App. Bd., supra,* 71 Cal.2d 588, 593; *Zemke* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 794, 798 [69 Cal.Rptr. 88, 441 P.2d 928].)

■ The only logical and reasonable inference to be drawn from all the evidence is that petitioner suffers from a psychoneurotic syndrome described as "cardiac neurosis." Petitioner's unimpeached testimony concerning the time and manner in which his symptoms first appeared and later progressed, together with expert medical evidence, gave rise to a clear inference of industrial causation. (See *Lundberg* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 436, 440 [71 Cal.Rptr. 684, 445 P.2d 300]; *Garza* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 312, 318 [90 Cal.Rptr. 355, 475 P.2d 451].) While the evidence supports the board's finding that petitioner does not have heart disease, it does not support the decision that petitioner did not sustain a disabling industrial injury.

■ A psychoneurotic injury caused by the work environment is a compensable injury.[5] (*Burnight* v. *Industrial Acc. Com.,* 181 Cal.App.2d 816, 823 [5 Cal.Rptr. 786]; *Stamation* v. *Workmen's Comp. App. Bd.,* 31 Cal. Comp. Cases 277; *Hall* v. *Sears, Roebuck & Co.,* 18 I.A.C. 10; Note, *Workmen's Compensation Awards For Psychoneurotic Reactions,* 70 Yale L.J. 1129.) The more enlightened view to which we subscribe does not impose physical accident or trauma as a precondition of recovery for psychoneurotic injury.[6] (*American National Red Cross* v. *Hagen* (7th Cir. 1964) 327 F.2d 559; 1A Larson, Workmen's Compensation Law (1970) § 42.23; Note, *Workmen's Compensation Awards For Psychoneurotic Reactions,* 70 Yale L.J. 1129, 1135-1138.) ■ In order to find a physical industrial injury, a single identifiable traumatic experience need not be shown. (*Fireman's Fund Indem. Co.* v. *Ind. Acc. Com.,* 39 Cal.2d 831, 834 [250 P.2d 148]; *Lumbermen's Mut. Cas. Co.* v. *Ind. Acc. Com.,* 29 Cal.2d 492, 496 [175 P.2d 823]; *Argonaut Ins. Co.* v. *Industrial Acc. Com.,* 231 Cal.App.2d 111, 116 [41 Cal.Rptr. 628].) The disabling injury may be the result of the cumulative effect of each day's stresses and strains.

---

[5]Labor Code section 3208 provides in part: " 'Injury' includes *any* injury or disease arising out of the employment. . . ." (Italics supplied.)

[6]In the field of tort law, California has rejected the physical impact rule. (*Dillon* v. *Legg,* 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Vanoni* v. *Western Airlines,* 247 Cal.App.2d 793, 795 [56 Cal.Rptr. 115].)

*(Fireman's Fund Indem. Co.* v. *Ind. Acc. Com., supra,* 39 Cal.2d 831, 834.) We perceive no logical basis for a different requirement for a psychoneurotic injury. To one experiencing it, such an injury is as real and disabling as a physical injury.

 For the foregoing reasons we conclude that the board's finding that the petitioner did not sustain an industrial injury is not supported by substantial evidence and that the board's decision must be set aside.

### III

There is a further reason why the board's decision must be annulled. The board failed to comply with the procedural requirements of Labor Code section 5908.5. In any decision on reconsideration altering or amending an order or award the board must state the evidence relied upon and specify in detail the reasons for its decision in order to assist the reviewing court in ascertaining the principles relied upon by the board, to assist the board in avoiding a careless or arbitrary act, and to make the right of judicial review meaningful. *(Goytia* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 889, 893 [83 Cal.Rptr. 591, 464 P.2d 47]; *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 633-634; *Lundberg* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 436, 440-441; *Evans* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633].) In the instant case the board failed to set forth the unimpeached evidence concerning petitioner's complaints. "The referee and appeals board 'must accept as true the intended meaning of [evidence] both uncontradicted and unimpeached.' " *(LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 639; *McAllister* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 408, 413 [71 Cal.Rptr. 697, 445 P.2d 313].) The board's conclusionary statement that petitioner did not sustain an industrial injury does not tell us what consideration, if any, the board gave to the uncontradicted evidence that petitioner experienced the symptoms he described. The decision does not give any reason for ignoring or rejecting the plain inference that petitioner sustained a disability from a mental disturbance caused by the pressures, dangers and environment of his work. The board's failings in the foregoing respects violated both the spirit and letter of Labor Code section 5908.5. *(Goytia* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 889, 893; see *Lundberg* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 436, 440-441.) Disability by reason of an industrially caused mental disturbance was within the scope of the issues from the outset. In his initial "minutes of hearing" the referee noted the following as one of the issues: "Claimed injury includes an emotional condition." Testimony and medical reports pertaining to that issue were received in evidence. Although the referee did not make a finding on the issue for the

obvious reason that he found that petitioner sustained a heart injury, petitioner's counsel did raise the issue in his petition for reconsideration by pointing out "cardiac neurosis" as one of the alternative explanations for petitioner's disability.

If the board had any doubts whether petitioner sustained a psychoneurotic injury in the course of his employment it possessed the means to resolve such doubts. In an analogous context the Supreme Court has aptly stated: "It should be stressed that where the undisputed evidence points towards an industrial injury had the board any doubts as to the cause of the injury, it has the means to resolve those doubts. Upon the filing of a petition for reconsideration the board may direct the taking of additional evidence (Lab. Code, § 5906), and the board is given power to direct any employee claiming compensation to be examined by a physician (Lab. Code, § 5701). In the instant case, the board did not follow this procedure and attempt to resolve any doubts it may have had with respect to the inference of industrial causation. Instead it determined in the absence of any supporting evidence to reject the inference of industrial causation, and this it may not do." (*Lundberg* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 436, 440; *Garza* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 312, 318.) In the present case, the board rejected the inference of industrially caused "cardiac neurosis" without any supporting evidence.

The decision of the appeals board on reconsideration is annulled and the case remanded for further proceedings consistent with the views herein expressed.

Gardner, J., and Kerrigan, J., concurred.