[No. B123451. Second Dist., Div. Seven. Mar. 15, 1999.]

SCHEFFIELD MEDICAL GROUP, INC., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CALIFORNIA
INDEMNITY INSURANCE COMPANY et al., Respondents.

## COUNSEL

Jones, Day, Reavis & Pogue, Elwood Lui, Peter G. McAllen, Mark M. Kassabian; and Daniel L. Walker for Petitioner.

Stockwell, Harris, Widom & Woolverton and George Woolverton for Respondents California Indemnity Insurance Company and General Accident Insurance Company.

Lisa R. Geraurd for Respondent Great States Insurance Company.

Sheppard, Mullin, Richter & Hampton, Frank Falzetta, James M. Burgess; McCambridge, Deixler & Marmaro, Lary Alan Rappaport; Heggeness & Sweet and Clifford D. Sweet for Respondent State Compensation Insurance Fund.

Horvitz & Levy and Christina J. Imre for Respondents Superior National Insurance Company and Superior Pacific Casualty Company.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

## WOODS, J.—

### INTRODUCTION

Scheffield Medical Group, Inc., has petitioned for review of a Workers' Compensation Appeals Board (Board) ruling that all medical reports dated later than January 16, 1991, are inadmissible due to violations of Labor Code section 4628.[1] We order the ruling affirmed. The request of Benjamin Y. Chong, M.D., to file an amicus curiae brief is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Medical-legal reports were generated by Pace, Scheffield and Charlton Medical Groups[2] in 107 cases consolidated for trial on one issue only—whether Maria Blanca Herrera was properly identified in those reports in

[1]Labor Code former section 4628 applicable at the time of the claims herein provided, in pertinent part, "(a) Except as provided in subdivision (c), no person, other than the physician who signs the medical-legal report, except a nurse performing those functions routinely performed by a nurse, such as taking blood pressure, shall examine the injured employee or participate in the nonclerical preparation of the report. . . . [¶] (b) The report shall disclose the name and qualifications of any person who administers diagnostic studies. [¶] . . . [¶] (e) Failure to comply with the requirements of this section shall make the report inadmissible as evidence and shall eliminate any liability for payment of any medical-legal expense incurred in connection with the report."

Unless otherwise specified, all statutory references are to the Labor Code.

[2]Pace merged with Scheffield and disappeared. Scheffield owns the liens of each of the three entities.

compliance with section 4628. In each case, at least one report stated that "[d]iagnostic tests were administered by Blanca Herrera, licensed medical assistant and radiograph technician."

Dr. Michael Wai-Pui Lam, owner of the three medical groups and licensed radiologist, testified on behalf of Scheffield. Dr. Lam hired Ms. Herrera in February 1989 as an office assistant. Ms. Herrera had been attending Nova Institute of Health Technology (Nova) to become a licensed X-ray technician. She had completed the academic requirements and needed to complete clinical training. Nova was certified by the California Department of Health Services (DHS) to place students in appropriately supervised clinical settings.

In April 1989, Dr. Lam and Nova made the first attempt to enter into an affiliation agreement. However, that agreement never went into effect. Throughout 1990 and 1991, one or another of the three parties involved in the affiliation was not in compliance with state regulations, and attempts to affiliate were not approved by DHS. Without DHS approval, Ms. Herrera could not legally operate an X-ray machine.[3] An affiliation agreement was finally approved February 20, 1992.

DHS notices to the parties regarding lack of compliance were not copied to the others and Dr. Lam claimed ignorance of the lack of approval. However, the workers' compensation judge (WCJ) found that by January 16, 1991, Dr. Lam knew that no affiliation agreement had been approved and that Ms. Herrera could not legally operate an X-ray machine. Yet Dr. Lam allowed Ms. Herrera to continue taking X-rays.

The WCJ relied in part on the testimony of Lorraine Adams, Nova's placement coordinator, to support his finding. Ms. Adams informed Dr. Lam several times of the lack of certification but could not pinpoint precise dates. The WCJ found Ms. Adams credible in general but not credible with regard to the actual dates other than January 16, 1991. The WCJ also relied on the date of the so-called "renewal" agreement between Nova and Pace dated January 16, 1991. He found Dr. Lam's protestations of ignorance thereafter not credible. The WCJ also found that it was the practice of the DHS to permit the schools to "certify" supervisors with postapproval by the DHS.

---

[3]Health and Safety Code former section 25671 (1992 version, renumbered in 1995) provided that "It shall be unlawful for any person to administer or use diagnostic or therapeutic X-ray on human beings in this state after July 1, 1971, unless that person has been certified or granted a permit . . . is acting within the scope of that certification or permit, and is acting under the supervision of a licentiate of the healing arts." (Stats. 1992, ch. 870, § 5, p. 4042.)

The WCJ reasoned that because Dr. Lam was unaware of DHS's revocation of Nova's certification before January 16, 1991, he was allowing Ms. Herrera to operate the X-ray machine based on ostensible authorization and Dr. Lam had a good faith belief that Ms. Herrera had authorization.

The WCJ also found that although Ms. Herrera did not read the X-rays or make a diagnosis, her "mechanical" function was an intrinsic part of the diagnostic process.

Scheffield petitioned for reconsideration, raising arguments reiterated in its petition for review and discussed in detail, *post*.

The Board generally agreed with the WCJ but issued its own opinion making slightly different findings. The Board agreed that while Ms. Herrera did not make any diagnoses, she was involved in the diagnostic process— "The taking of x-rays is a technical function, one which requires training, apprenticeship, and licensing, all regulated by the DHS and other government agencies. This is certainly more than a clerical or mechanical function, and clearly places her within the purview of section 4628 (b), as a 'person who performed any services in connection with the report, including diagnostic studies, other than its clerical preparation.' "[4]

The Board also stated that Dr. Lam's "technical" compliance with section 4628 was negated by his misrepresentation of Ms. Herrera's qualifications. The Board disallowed all of Scheffield's medical-legal reports dated January 16, 1991, or later.

Scheffield now seeks review of the Board's order.

## DISCUSSION

Scheffield contends: (1) section 4628 does not apply because the WCJ found that Ms. Herrera was not involved in the diagnostic process, and even if the statute does apply, the Board erroneously applied the 1993 amended version of section 4628, (2) the Board's decision is contrary to recent case law, (3) Lorraine Adams's testimony is not substantial evidence because the WCJ found she was not credible, (4) objections based on section 4628 were waived, (5) the Board's decision was based on unverified allegations of respondents, (6) Scheffield had no knowledge of any problem with Ms.

---

[4]The Board's expansion of clerical function to include mechanical appears in its decisions in *Carpio* v. *Hallmark Health Services, Inc.* (WCAB, June 1, 1995) LA 653687 and *Bravo* v. *Mountain View Car Wash* (WCAB, Jan. 22, 1996) VNO 276846 and is discussed further in part I of the text.

Herrera's status, and (7) the liens were erroneously dismissed in their entirety.

Respondents, or real parties in interest, here are the workers' compensation insurers of various employers: California Indemnity Insurance Company, General Accident Insurance Company, Great States Insurance Company, State Compensation Insurance Fund, Superior National Insurance Company and Superior Pacific Casualty Company (Insurers).[5] Insurers answer that the Board's decision is supported by substantial evidence, there were no materially different amendments to section 4628, subdivisions (b) and (e) so the Board's error in quoting the amended statute is harmless, the authorities cited by Scheffield are not precedent, the employers did not waive their objections, and the liens were properly dismissed in their entirety.

## I.

Scheffield first contends that the Board erred in applying the 1993 version of section 4628 when services were rendered in 1991 and 1992.

Section 4628 has been in effect in materially the same form since January 1, 1990. However, the 1993 version (eff. date, Sept. 30, 1992) of former subdivision (b) required disclosure of "each person who performed any services in connection with the report, including diagnostic studies," whereas, the 1991 and 1992 versions required disclosure of "any person who administers diagnostic studies."[6]

Scheffield contends that the 1993 version is broader and if the 1992 version had been applied, Ms. Herrera would not have to be listed at all, as she did not administer a diagnostic study and made no diagnosis. Insurers respond that the change in the statute is not materially different because in

---

[5]Many more insurers were parties below. The few listed here apparently are representing all of the insurers.

[6]Section 4628, former subdivision (b) (version in effect in 1993) provided: "The report shall disclose the date when and location where the evaluation was performed; that the physician or physicians signing the report actually performed the evaluation; whether the evaluation performed and the time spent performing such evaluation was in compliance with the guidelines established by the Industrial Medical Council or the administrative director pursuant to paragraph (5) of subdivision (j) of Section 139.2 and the name and qualifications of each person who performed any services in connection with the report, including diagnostic studies, other than its clerical preparation. If the report discloses that the evaluation performed or the time spent performing such evaluation was not in compliance with the guidelines established by the Industrial Medical Council, the report shall explain, in detail, any variance and the reason or reasons therefor." (Stats. 1992, ch. 1352, § 7, pp. 6748-6749.)

either case, it requires disclosure of the X-ray technician who administers diagnostic studies. We agree.

We first note that the statute itself exempts only clerical and routine nurse functions from disclosure. Second, we note that Scheffield's medical-legal reports concede that Ms. Herrera administered diagnostic tests. The WCJ's comment that the mechanical act of taking the X-rays was part of the diagnostic process may have created an ambiguity. However, as the Board explained, and it is the Board's decision we are reviewing, Ms. Herrera was not a mere button pusher but performed the duties of an X-ray technician which required training, apprenticeship and licensing by the DHS and are more than a clerical or mechanical functions, even if she did not render a diagnosis.

We approve the Board's finding in general; however, we cannot endorse the Board's expansion of the statute to exempt "mechanical" functions. We deduce that the Board is referring to the act of pushing a button. Whatever else may be considered a "mechanical" function, pushing the button on the X-ray machine is not the sum total of an X-ray technician's function. An X-ray is a diagnostic tool. Whoever takes the X-ray is administering the diagnostic test. The statute does not require that the person administering the diagnostic study must interpret the study. Nor does the statute require the person administrating the study to also render a diagnosis based on the results. The statute requires the administrator of the diagnostic study to be identified. If the Legislature had meant anything else, it could have said so.

Scheffield also argues that the Board improperly relied on section 4628, subdivision (j), which requires the signing physician to declare that the contents of the report are true under penalty of perjury and which was not in effect until 1993.[7] It appears that the Board did assume that the reports contained physicians' declarations and held that the false declarations excused Insurers from making timely objection within 60 days of receipt of the

---

[7]Section 4628, former subdivision (j) (version in effect in 1993) provided: "The report shall contain a declaration by the physician signing the report, under penalty of perjury, stating: [¶] 'I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.' [¶] The foregoing declaration shall be dated and signed by the reporting physician and shall indicate the county wherein it was signed." (Stats. 1992, ch. 1352, § 7, pp. 6749-6750.)

bill pursuant to section 4622, subdivision (a).[8] However, the Board did not rely solely on violation of subdivision (j) to find section 4622, subdivision (a) was inapplicable. The primary rationale for the decision was that the Insurers could not know to object to what appeared to be a properly designated X-ray technician. The reference to subdivision (j) was surplusage.

Scheffield also contends that the employers are barred by collateral estoppel from litigating this issue. Scheffield argues that it was previously finally determined in *Bravo* v. *Mountain View Car Wash, supra,* VNO 276846, and *Carpio* v. *Hallmark Health Services, Inc., supra,* LA 653687, that the identical description of Ms. Herrera had technically complied with section 4628 and these panel decisions were endorsed by the Court of Appeal in *Scheffield Medical Group* v. *Workers' Comp. Appeals Bd. (Pina* and *Sosa)* (1997) 62 Cal.Comp.Cases 294.

In *Bravo* v. *Mountain View Car Wash,* and *Carpio* v. *Hallmark Health Services, Inc.,* the Board stated that Scheffield had *technically* complied with the requirements of former section 4628; however, these decisions were not final determinations that Scheffield's reports were therefore admissible. Nor did the court in *Scheffield Medical Group* v. *Workers' Comp. Appeals Bd. (Pina* and *Sosa),* endorse technical compliance. In *Bravo* the Board remanded for further consideration of several issues, including "whether Ms. Herrera's role in taking x-rays was limited to a mechanical process which was supervised by a licensed x-ray supervisor, or whether she had any input into the diagnostic process."[9] Similarly, in *Carpio,* the Board remanded for an independent determination as to whether she was involved in making the diagnosis. The Board opined that, "if the individual's role was strictly mechanical and properly supervised, the lack of licensing qualifications may

---

[8]Section 4622, subdivision (a) provides: "Except as provided in subdivision (b), within 60 days after receipt by the employer of each separate, written billing and report, and where payment is not made within this period, that portion of the billed sum then unreasonably unpaid shall be increased by 10 percent, together with interest thereon at the rate of 7 percent per annum retroactive to the date of receipt of the bill and report by the employer. Where the employer, within the 60-day period, contests the reasonableness and necessity for incurring the fees, services, and expenses, payment shall be made within 20 days of the filing of an order of the appeals board directing payment. [¶] The penalty provided for in this subdivision shall not apply if (1) the employer pays the provider that portion of his or her charges which do not exceed the amount deemed reasonable pursuant to subdivision (c) of Section 4624 within 60 days of receipt of the report and itemized billing, and (2) the appeals board sustains the employer's position in contesting the reasonableness or necessity for incurring the expenses. If the employer prevails before the appeals board, the referee shall order the physician to reimburse the employer for the amount of the paid charges found to be unreasonable."

[9]In quoting the Board, we neither endorse nor disapprove the criteria set forth.

not necessarily make the report inadmissible as evidence or eliminate liability for the report." (*Carpio* v. *Hallmark Health Services, Inc., supra,* LA 653687 at p. 3.) However, "if the record establishes that her role was more than a mechanical one, it will definitely affect the admissibility of the initial orthopedic medical-legal report and the issue of liability for it, if any. It also may affect the admissibility of the remaining two medical reports, and the issue of liability for them, if any." (*Id.,* typed opn. at p. 4.) Thus, neither decision held that technical compliance was sufficient. And, as can be seen in this case, the Board did not believe that Ms. Herrera's role was simply mechanical.

Scheffield contends that the decision in *Scheffield* v. *Workers' Comp. Appeals Bd.* (*Pina* and *Sosa*) endorsed technical compliance by its declaration, "the issue is moot." (62 Cal.Comp.Cases 294, 296.) Scheffield had requested the court find that the WCJ was biased because he relied on letters from the DHS questioning Ms. Herrera's qualifications which were outside the record. The court declined because the issue was not sufficiently briefed, nor was the record sufficiently complete to render a decision thereon. The court then commented that the Board's decision in *Carpio* remanded for the WCJ to determine Ms. Herrera's role in testing and the Board's decision in *Ana Alarcon* v. *La Tapatia Tortilleria* (WCAB, Mar. 1, 1995) LAO 665993 remanding the matter because the WCJ had failed to provide Scheffield with an opportunity to respond, seemed to make moot the issue of judicial bias.

However, the Board did decide in the cases underlying *Scheffield* v. *Workers' Comp. Appeals Bd.* (*Pina* and *Sosa*), that the medical-legal reports prepared by Scheffield's physician were inadmissible because he misrepresented Ms. Herrera's qualifications, and the court's decision did not change that finding. We may consider those final decisions as examples of the Board's interpretation of section 4628. As the administrative agency charged with the statute's enforcement and interpretation, the Board's opinion, while not necessarily controlling, is of great weight; and courts will not depart from such construction unless it is clearly erroneous or unauthorized. (*Cannon* v. *Industrial Acc. Comm.* (1959) 53 Cal.2d 17, 22 [346 P.2d 1]; *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683].) Technical compliance should not be exculpatory. We presume the Legislature intended honest compliance with section 4628, not mere "technical" compliance.

Scheffield next argues that Ms. Herrera did not even have to be listed because she was just a technician and played no role in the diagnostic process and the Board erred in finding that she did, especially when the WCJ found that she did not.

We disagree with Scheffield's characterization of the WCJ's decision. However, the WCJ's remarks are not relevant, as the Board has the authority to reweigh the evidence and make new findings of fact. (§ 5907; *Buescher* v. *Workmen's Comp. App. Bd.* (1968) 265 Cal.App.2d 520, 529 [71 Cal.Rptr. 405].) This court has no authority to reverse findings of fact based on substantial evidence. (§ 5952; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) While the evidence may be susceptible to different inferences, the Board's inference may not be overturned by the court even if the court would infer otherwise. (*Riskin* v. *Ind. Acc. Com.* (1943) 23 Cal.2d 248 [144 P.2d 16].)

## II.

Scheffield next contends that the Board's decision does not comply with *Wood* v. *Workers' Comp. Appeals Bd.* (Cal. App.), which Scheffield claims restricted sanctions to circumstances where noncompliance with section 4628 affects the reliability of the medical-legal report in question.

*Wood* was decertified by the Supreme Court on August 12, 1998 and is not, therefore, precedent. The Court of Appeal held that the Board erred in not admitting the report of a doctor who had a good faith belief that the incorrect name of the diagnostician he had identified in his medical-legal report was correct because it did not affect the reliability of the report.

In the construction of a statute, the intention of the Legislature is to be pursued, if possible. (Code Civ. Proc., § 1859; *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1993) 6 Cal.4th 1112, 1127 [26 Cal.Rptr.2d 231, 864 P.2d 502].) It is appropriate to begin with the words of the provision to be construed, as these words are generally "the best indicator of legislative intent." (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) When the Legislature has stated the purpose of its enactment in unmistakable terms, we must apply the enactment in accordance with the legislative direction; all other rules of construction must fall by the wayside. Speculation and reasoning as to legislative purpose must give way to expressed legislative purpose. (*Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 831 [196 Cal.Rptr. 38, 670 P.2d 1121].) The Legislature is presumed to have meant what it said, and the plain meaning of the language governs. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)

When the language of a statute does not shed light on the Legislature's intent, that intent may be determined from other factors. (*Nunn* v. *State of*

*California* (1984) 35 Cal.3d 616, 624 [200 Cal.Rptr. 440, 677. P.2d 846].) The words of the statute must be construed in context, keeping in mind the nature and purpose of the statute. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

That section 4628, subdivisions (a) through (e) is a strict liability statute is obvious from its plain language, at least insofar as the admissibility of a medical-legal report is concerned. Former subdivision (b) in 1992 unequivocally stated, in pertinent part, "(b) The report shall disclose the name and qualifications of any person who administers diagnostic studies," and similarly unequivocally stated after the 1993 amendment, "(b) The report . . . shall disclose the name and qualifications of each person who performed any services in connection with the report, including diagnostic studies, . . ." The only intent requirements are in subdivisions (f) through (h), which impose heavier sanctions on the signing physician for a *knowing* violation than simply disqualifying the report and related charges, imposing a $1,000 fine subjecting him/her to contempt proceedings and possibly revoking permission to evaluate workers' compensation claimants altogether.[10] There is no qualifying language in the statute affording the Board discretion to determine whether the reliability of the report is affected.

Section 4628 was enacted in 1989 as part of the overall reform package to ensure the reliability of the medical evaluation, which it hoped to achieve by controlling the quality of the medical-legal report. The Legislature referred to section 4628 as an anti-ghostwriting statute. (See *Ameri-Medical Corp.* v. *Workers' Comp. Appeals Bd.* (1996) 42 Cal.App.4th 1260, 1279-1281 [50 Cal.Rptr.2d 366]; Margolin-Bill Greene Workers' Compensation Reform Act of 1989, Assem. Bill No. 276, Stats. 1989 ch. 892, p. 2928.) Its requirements were to ensure that the doctor who signed the report had actually examined the injured worker and had prepared the evaluation. Persons performing diagnostic tests, whether in-house or contracted out, were to be accurately identified so the litigants would know everyone involved in the evaluation process. Consistent with the nature and purpose of the statute, the Legislature drafted a relatively unambiguous statute leaving little room for equitable considerations.

---

[10]Section 4628, subdivisions (f) - (h) provide, "(f) Knowing failure to comply with the requirements of this section shall subject the physician to a civil penalty of up to one thousand dollars ($1,000) for each violation to be assessed by a workers' compensation judge or the appeals board. [¶] (g) A physician who is assessed a civil penalty under this section may be terminated, suspended, or placed on probation as a qualified medical evaluator pursuant to subdivisions (k) and (*l*) of Section 139.2. [¶] (h) Knowing failure to comply with the requirements of this section shall subject the physician to contempt pursuant to the judicial powers vested in the appeals board."

■ Scheffield also contends that *American Psychometric Consultants, Inc.* v. *Workers' Comp. Appeals Bd.* (1995) 36 Cal.App.4th 1626 [43 Cal.Rptr.2d 254], restricted sanctions to circumstances where objection is timely made. *American Psychometric* is not at all applicable. In that case, the court held that employers would not be permitted to reopen litigation of already paid three-year-old liens for medical-legal reports to obtain restitution on the basis of a statutory amendment, stating that medical-legal reports prepared before a claim was disputed were not admissible and was declaratory of existing law. The court reasoned that the 1993 amendment should not be applied retroactively to permit restitution simply because the prevailing practice until 1993 was to ignore the law and pay the bills whether or not the claim was contested. The court was concerned with the financial stability of already completed transactions. *American Psychometric* did not address the issue of how soon after discovery of factual misrepresentations objection must be made.

In the instant matter, Scheffield has not been paid and the concerns of *American Psychometric* are not present. While usually objection to payment of a medical-legal report must be made within 60 days of receipt of the bill pursuant to section 4622, section 4622's requirements do not apply here because Insurers were unaware of the misrepresentation of Ms. Herrera's qualifications and therefore were excused from objecting prior to that discovery, as discussed previously.

### III.

■ Scheffield also contends that Ms. Adams was not a credible witness based on the WCJ's finding that Ms. Adams was not credible as to precisely when she told Dr. Lam that Ms. Herrera was not authorized to take X-rays.[11] However, the WCJ did find her generally credible. ■ On questions of credibility, we defer to the judgment of the WCJ, who is in the best position to observe the demeanor of the witness. (*Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 318 [90 Cal.Rptr. 355, 475 P.2d 451].) The WCJ may accept part of a witness's testimony as credible and reject other parts. (*Industrial Indem. Co.* v. *Ind. Acc. Com.* (1953) 115 Cal.App.2d 684, 692 [252 P.2d 649].) ■ Moreover, the WCJ did not rely solely on the testimony of Ms. Adams to find that Dr. Lam was certainly aware on January 16, 1991, that Ms. Herrera could not perform the function of X-ray technician. His decision was also based on collateral confirming evidence, the "renewal" agreement of January 16, 1991, and Dr. Lam's testimony.

---

[11]Scheffield directs the court's attention to the transcript of Ms. Adams's testimony. We decline to review the transcript because it was not properly submitted to the Board for its review. We review, instead, the minutes of hearing and summary of evidence.

Scheffield also contends that because the agreement was entitled "renewal," it proved the legitimacy of the previous contract. We disagree. All prior attempted affiliation contracts were void either because Nova was not authorized to place students with Dr. Lam, or because Dr. Lam was not approved to supervise students. The so-called renewal agreement was the only valid contract. A subsequent legitimate contract cannot legitimize a void contract.

Dr. Lam also contends that a letter he wrote to Paul Graveline of DHS demonstrates his compliance with DHS requirements and compels the conclusion that Ms. Herrera's activities were authorized throughout the entire time period in question because of DHS's practice of approving the fait accompli. Certainly in light of the troubled history in this case, the letter demonstrates only that as of January 21, 1992, after a telephone conversation with Paul Graveline of DHS, Dr. Lam was under the impression that all problems had been resolved and an affiliation agreement would finally be approved. The new affiliation agreement was in fact approved and went into effect on March 11, 1992.[12] However, the letter certainly does not compel the conclusion Dr. Lam urges and is susceptible to the inference that Ms. Herrera's activities were not authorized until January 21, 1992, at the earliest. When evidence is susceptible to different inferences, the Board's inference will not be overturned. (*Riskin* v. *Ind. Acc. Com., supra,* 23 Cal.2d 248.)

In any event, guilty knowledge is not a requirement to find the medical reports inadmissible. Dr. Lam's awareness only pertains to whether he should be found guilty of a misdemeanor and fined, issues not raised here. (§ 4628, subds. (f)-(h).) Section 4628 was violated the first time Ms. Herrera was described in a medical report as a licensed medical assistant and radiographer. The law presumes the signatory of the report will accurately identify those persons required to be identified. The Legislature solidified this requirement by adding subdivision (j), requiring compliance under penalty of perjury.

## IV.

Scheffield contends that the Insurers waived their right to object because they knew by 1992 of Ms. Herrera's lack of qualifications based on prior litigation in *Pina* v. *1928 Jewelry* (Dec. 15, 1994) WCAB PAS 014276 (see *Scheffield* v. *Workers' Comp. Appeals Bd.* (*Pina* and *Sosa*),

---

[12]Ms. Herrera never completed her training with Dr. Lam. The employment relationship was severed on January 14, 1992.

*supra*, 62 Cal.Comp. Cases 294) and did not object at that time. On the contrary, the prior litigation in *Carpio, Bravo, Pina* and *Sosa* appears to be timely objection. However, lack of any final decision in *Carpio* and *Bravo* and the long wait for *Pina* and *Sosa* (the appellate decision issued in 1996) apparently inspired the Insurers here to coordinate their efforts and consolidate the remaining cases for a more efficient approach.

## V.

Scheffield argues that the Board relied in error on Insurers' unverified averments that they raised the issue of Ms. Herrera's lack of qualification many times after they became aware, because unverified averments are not evidence.

Even though the Board's reliance on the unverified averments was improper, the history of the litigation of this issue, as discussed in part IV, is sufficient proof of timely objections.

Scheffield also asserts that since there has never been a formal objection, it has been denied due process and "forced" to guess at the claims against it. Scheffield has litigated the issue of Ms. Herrera's qualifications and application of section 4628. By so doing, Scheffield has waived objection. (*Moyer v. Workmen's Comp. Appeals Bd.* (1972) 24 Cal.App.3d 650, 656 [100 Cal.Rptr. 540].)

Scheffield also contends that the Board invaded the jurisdiction of the DHS by determining licensing qualifications. This contention lacks merit. The Board has exclusive jurisdiction to adjudicate violations of section 4628. (§§ 5300, 5301; see also *Hand Rehabilitation Center* v. *Workers' Comp. Appeals Bd.* (1995) 34 Cal.App.4th 1204 [40 Cal.Rptr.2d 734] and *Bell* v. *Samaritan Medical Clinic, Inc.* (1976) 60 Cal.App.3d 486, 489 [131 Cal.Rptr. 582].) The Board made no determination regarding licensing qualifications. The Board reviewed the evidence and deduced therefrom that Ms. Herrera was not a licensed medical assistant and radiographer as represented.

## VI.

Scheffield also contends that it had no knowledge of Nova's failure to be certified and it should not be penalized for Nova's failure which led to Ms. Herrera's lack of license. The Board found otherwise, as discussed previously. The findings of the Board on questions of fact are conclusive and not subject to review if supported by substantial evidence. (§ 5952;

*LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 637.) As this argument appears to be contingent on finding Ms. Adams not credible, it is moot.

### VII.

Finally, Scheffield argues that there is no basis to disallow the liens in their entirety, first that only the report in which Ms. Herrera is identified should be affected and second, that only the charges for the X-rays should be deducted.

Section 4628, subdivision (e) states that failure to comply with the requirements of section 4628 shall eliminate any liability for payment of any medical-legal expense incurred in connection with the inadmissible report.

Medical-legal evaluators often prepare two or more reports per injured worker; an initial report while the injured worker is still temporarily disabled and a final report when the injured worker is permanent and stationary, as was done in several of these consolidated cases. The reports are interdependent and constitute one opinion. Thus, the medical-legal expenses incurred in connection with the inadmissible report appropriately would include all reports prepared by that expert for that claim, as the Board found.

Regarding Scheffield's second argument, the plain language of the statute leaves no room for doubt that *all* charges billed in connection with the report, not just the X-ray costs, are to be disallowed.

The Board's order was clear. For these consolidated claims, all medical-legal reports dated after January 16, 1991, and all charges therefor are disallowed.

### DISPOSITION

The order of the Workers' Compensation Appeals Board is affirmed. Each side is to bear its own costs.

Lillie, P. J., and Neal, J., concurred.

A petition for a rehearing was denied April 13, 1999, and petitioner's application for review by the Supreme Court was denied June 16, 1999.