[No. B145394. Second Dist., Div. Three. May 22, 2001.]

PHILLIP GANGWISH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CITY OF LOS
ANGELES FIRE DEPARTMENT, Respondents.

**COUNSEL**

Law Offices of Ernest A. Canning and Ernest Canning for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Heath, Spoeri & Mendoza and James Amato for Respondent City of Los Angeles Fire Department.

## Opinion

### KLEIN, P. J.—

#### INTRODUCTION

Phillip Gangwish, injured while a firefighter/inspector for the City of Los Angeles Fire Department (City), petitions this court for increased compensation under Labor Code section 4650 for late payment of permanent disability (PD) benefits, and under section 5814 for nonpayment under section 4650.[1] The Workers' Compensation Appeals Board (WCAB) denied the increased compensation on grounds not raised before its decision issued, which Gangwish claims violated due process and is contrary to the record.

The City answers that increased compensation under section 4650 does not apply to the late payment of PD because, as the statute requires, there were no indemnity payments of temporary disability (TD). The City further contends it had genuine legal doubt of liability and that increased compensation under section 5814 is also inapplicable.

We find that section 4650 is applicable to late payments of PD that follow the first PD payment, even when TD is not paid. We also find that due process was violated, and the basis for the WCAB's decision was error. However, prior to this court's interpretation of section 4650, reasonable legal doubt of liability existed and additional increased compensation under section 5814 is not warranted.

Accordingly, the WCAB's decision is annulled in part, and the matter is remanded.

#### FACTUAL AND PROCEDURAL BACKGROUND

Phillip Gangwish admittedly injured both shoulders and knees, his back and skin, and sustained loss of hearing bilaterally with tinnitus, while a firefighter and inspector for the City from April 13, 1968, through March 1, 1999. In addition, Gangwish injured his right knee on February 1, 1995, the left shoulder on July 12, 1996, the right calf on March 27, 1997, the back and right shoulder on July 10, 1998, and the back on August 31, 1999.

Beginning in the mid-1980's, Gangwish was provided medical care for hearing loss by the City. This included consultation with an audiologist, testing and hearing aids.

---

[1] All further reference to statute is to the Labor Code unless stated otherwise.

On March 2, 1998, the City had Gangwish evaluated for hearing loss by Eugene Freed, M.D. Dr. Freed diagnosed high-tone hearing nerve loss and intermittent minimal tinnitus. Dr. Freed also found Gangwish had measured hearing loss, which was due to "permanent residuals of his work around loud noise over the years." The claims administrator for the City, Ana Garcia, received Dr. Freed's report in March of 1998, but no benefits were paid.

On or about October 1, 1998, Gangwish retained counsel. By letter the next day, Gangwish filed and served a claim form,[2] an application for adjudication of claim,[3] and other jurisdictional and procedural documents. The documents were date-stamped October 6, 1998, by the WCAB.

In a separate letter dated October 2, 1998, Gangwish demanded payment of PD as indicated by Dr. Freed's report, plus 10 percent pursuant to section 4650, subdivision (d).[4]

Garcia responded by letter of October 13, 1998, that the date of injury for the hearing loss is May 17, 1984, and section 4650, subdivision (d) only applied to injuries on or after January 1, 1990. Garcia also indicated Gangwish would be reevaluated by Dr. Freed to address the issue of continuous trauma.[5]

---

[2]Section 5401, subdivision (a) in relevant part provides: "Within one working day of receiving notice or knowledge of injury under Section 5400 or 5402, which injury results in lost time beyond the date of injury or which results in medical treatment beyond first aid, the employer shall provide, personally or by first-class mail, a claim form and a notice of potential eligibility for benefits under this division to the injured employee . . ."

Under section 5401, subdivision (b), "Except as provided in subdivision (c), a claim form is deemed filed when it is personally delivered to the employer or received by the employer by first-class or certified mail."

Section 5401, subdivision (c) in relevant part states: "The claim form shall be filed with the employer prior to the injured employee's entitlement to late payment supplements under subdivision (d) of Section 4650 . . . . For purposes of this subdivision, a claim form is deemed filed when it is personally delivered to the employer or mailed to the employer by first-class or certified mail."

[3]An application for adjudication of claim establishes jurisdiction for injuries before January 1, 1990, and on or after January 1, 1994. (§ 5500.) On or after January 1, 1990, and before January 1, 1994, the claim form established jurisdiction.

[4]Section 4650, subdivision (d), effective for injuries on or after January 1, 1990, in relevant part states, "If any indemnity payment is not made timely as required by this section, the amount of the late payment shall be increased 10 percent and shall be paid, without application, to the employee, unless the employer continues the employee's wages under a salary continuation plan, as defined in subdivision (g). No increase shall apply to any payment due prior to or within 14 days after the date the claim form was submitted to the employer under Section 5401."

[5]Under Section 3208.1, "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending

Gangwish responded by letter of October 16, 1998, that Dr. Freed stated the hearing loss occurred over the years, or due to a cumulative trauma. ██ ██ Gangwish again demanded payment of PD and a section 4650 increase, and added that if not paid, he would pursue multiple penalties under section 5814.[6]

On October 28, 1998, the City issued a PD payment of $2,730 based on the March 2, 1998, report of Dr. Freed. The payment included accrued PD, but not a section 4650 increase.

Dr. Freed reevaluated Gangwish for the City on November 17, 1998. In a permanent and stationary[7] report to Garcia, Dr. Freed responded that according to Gangwish there had been no specific hearing injury on or about May 17, 1984, only treatment. As indicated in the previous report, the hearing

over a period of time, the combined effect of which causes any disability or need for medical treatment. The date of a cumulative injury shall be the date determined under Section 5412."

Cumulative injury is often referred to as a continuous or cumulative trauma.

[6]Section 5814 states in relevant part: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts."

In general, unreasonable delay or refusal occurs when there is no genuine doubt benefits are owed, from a medical or legal standpoint. (*Kerley v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227, 230 [93 Cal.Rptr. 192, 481 P.2d 200]; *Gallamore v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815 [153 Cal.Rptr. 590, 591 P.2d 1242].) It is the employer's burden to prove sufficient justification for the delay once delay is shown. (*Kerley v. Workmen's Comp. App. Bd., supra,* 4 Cal.3d at pp. 227, 230.)

For separate and distinct acts of unreasonable delay or refusal, multiple 10 percent penalties can be awarded, as held by *Christian v. Workers' Comp. Appeals Bd.* (1997) 15 Cal.4th 505 [63 Cal.Rptr.2d 336, 936 P.2d 115]. To promote the prompt-payment policy of section 5814, the 10 percent increase or penalty is assessed against the entire amount ultimately awarded for the class of benefit or compensation which was unreasonably delayed or refused, and includes that due before or after the award and whether timely paid, even if the amount unreasonably delayed is comparatively small. (*Rhiner v. Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213 [18 Cal.Rptr.2d 129, 848 P.2d 244], reaffirming *Gallamore v. Workers' Comp. Appeals Bd., supra,* 23 Cal.3d 815.)

The 10 percent increase under section 4650 pertains only to the amount delayed, whether unreasonably delayed or not, and is separate from, and can be in addition to, a section 5814 penalty, which is assessed against the entire species of benefit. (*Rhiner v. Workers' Comp. Appeals Bd., supra,* 4 Cal.4th at p. 1227, and *Mote v. Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 902, 910 [65 Cal.Rptr.2d 806].) Nonpayment of a section 4650 increase is a separate and distinct act apart from paying late the underlying benefit under *Christian v. Workers' Comp. Appeals Bd., supra,* 15 Cal.4th 505, and an unreasonable failure to pay the increase warrants a separate section 5814 penalty. (*Moulton v. Workers' Comp. Appeals Bd.* (2000) 84 Cal.App.4th 837 [101 Cal.Rptr.2d 175].)

[7]Permanent and stationary status can be defined as attained "after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." (Cal. Code Regs., tit. 8, § 10152.)

loss began in the mid-1970's and worsened over the years due to noise from sirens, air horns, traffic and heavy equipment.

On January 13, 1999, the City issued another PD payment for $2,004.25, apparently covering the period of November 17, 1998, through January 16, 1999.

Gangwish later filed a petition for imposition of penalties against permanent disability. Gangwish alleged the City was obligated to begin payment of PD within 14 days of Dr. Freed's March 2, 1998, report, and the failure to do so for the reason given by Garcia required a 10 percent penalty under section 5814. In addition, when payment of PD was finally made months later, the City did not include the 10 percent increase under section 4650, subdivision (d), which was unreasonable and justifies a second 10 percent penalty under section 5814.

The parties proceeded to trial on the issues of PD and multiple penalties. Gangwish testified of his overall disability, and that his hearing loss and treatment continued since the 1970's.

Garcia also testified. She stated there was no payment of PD from March of 1998 until October 28, 1998, because she overlooked the hearing loss readings reported by Dr. Freed. When payment was made, Garcia had received the hearing loss application for adjudication of claim, but did not include a 10 percent increase under section 4650 because a 1984 injury was involved.

On cross-examination Garcia conceded awareness of a continuous trauma hearing loss with reading of Dr. Freed's report in March of 1998. Garcia also admitted not providing Gangwish a claim form, and that she knew of section 4650 when the PD payment was made. In addition, no TD was paid for the hearing loss, and under section 4650, subdivision (b) PD is to be paid within 14 days of succession of TD.

The workers' compensation judge (WCJ) determined that Gangwish was permanently totally disabled. In regards to penalty, the WCJ awarded a single 10 percent increase under section 5814 because the City failed to timely advance PD despite competent medical evidence. The City has not challenged this finding.

Gangwish filed for reconsideration with the WCAB. Gangwish agreed with the WCJ that the City unreasonably failed to pay PD for seven months after receiving Dr. Freed's report, and penalty was justified. However,

Gangwish alleged that section 4650 also applied, and that the City's failure to pay the increase should have resulted in another section 5814 penalty.

In the report on reconsideration the WCJ responded that section 4650 does not apply where there were no periodic payments of TD or PD, as indicated by section 4650, subdivision (b).[8] Since section 4650 was inapplicable, there was no unreasonable refusal or delay in paying the 10 percent increase.

The WCAB denied reconsideration. However, the WCAB rejected the WCJ's reasons. Instead, the WCAB concluded that section 4650 is not triggered because, under section 4650, subdivision (d), " 'No increase shall apply to any payment due prior to or within 14 days *after the date the claim form was submitted to the employer* under Section 5401. (Emphasis added.)' "

The WCAB reasoned that in order for the 10 percent increase to apply, the claim form had to be filed before the PD payment on October 28, 1998. Since Gangwish did not offer the hearing loss claim form into evidence, this showing was not made. Therefore, no additional section 5814 penalty was owed.

Gangwish filed for review with this court. Gangwish points out that the hearing loss claim form was submitted to the City on October 2, 1998, and was contained in the WCAB's file. In addition, Gangwish argues that the City breached its obligation to provide the claim form under section 5401, subdivision (a), when informed of injury and disability by Dr. Freed's report, and should be estopped from relying on the 14-day requirement. Since section 4650 did apply and the 10 percent increase was owed, a section 5814 should also be assessed.

Gangwish further contends the WCAB's reasoning regarding the claim form was never raised prior to its decision, which denied due process under *Rucker v. Workers' Comp. Appeals Bd.* (2000) 82 Cal.App.4th 151 [97 Cal.Rptr.2d 852].[9] Given the opportunity, Gangwish would have argued that the City breached its duty to provide the claim form and should be estopped,

---

[8]Section 4650, subdivision (b) provides: "If the injury causes permanent disability, the first payment shall be made within 14 days after the date of the last payment of temporary disability indemnity. Where the extent of permanent disability cannot be determined at the date of last payment of temporary disability indemnity, the employer nevertheless shall commence the timely payment required by this subdivision and shall continue to make these payments until the employer's reasonable estimate of permanent disability indemnity due has been paid, and if the amount of permanent disability indemnity due has been determined until that amount has been paid."

[9]In *Rucker v. Workers' Comp. Appeals Bd., supra,* 82 Cal.App.4th 151, the Court of Appeal determined that due process was violated when the WCJ proceeded on a completely different theory for nonpayment of benefits than submitted by the parties, without affording an

and the claim form was served 26 days in advance of the PD payment as documented by the WCAB's own file.

The City answers that the only evidence concerning the claim form was that Garcia did not provide it, which did not exclude the possibility someone else did. In regards to service of the claim form, the October 2, 1998, letter from Gangwish did not include a proof of service.

The City also argues that according to section 4650, subdivision (b), payment of PD does not arise unless within 14 days of the last payment of TD. Since TD was not paid, PD was not owed, nor was the 10 percent increase for late payment of PD under section 4650, subdivision (d). In addition, there was no unreasonable refusal or delay under section 5814, since there was genuine doubt from a legal standpoint as to liability under section 4650.

The reply by Gangwish adds that the WCAB rejected the WCJ's reasoning that TD is a prerequisite for PD payments under section 4650, historically PD had to be timely paid whether or not there was TD, and the Legislature could not have intended to lessen the incentive for prompt payment in the reform legislation of 1989. Furthermore, the only reason Garcia failed to pay under section 4650 was her mistaken, but unreasonable, belief a 1984 injury caused the hearing loss.

DISCUSSION

I. <em>Standard of Review</em>

■ When interpreting a statute, the Legislature's intent should be determined and given effect. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Scheffield Medical Group, Inc. v. Workers' Comp. Appeals Bd.* (1999) 70 Cal.App.4th 868, 880-881 [83 Cal.Rptr.2d 71].) The best indicator of legislative intent is the plain meaning of the statutory language, when clear and unambiguous. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388 [20 Cal.Rptr.2d 523, 853 P.2d 978]; *Moyer v. Workmen's Comp. Appeals Bd.,* supra, 10 Cal.3d at p. 230; *Scheffield Medical Group, Inc. v. Workers' Comp. Appeals Bd., supra,* 70 Cal.App.4th at p. 880.) Effect also should be given to the statute's every word and clause, thereby leaving no part or provision useless, deprived of meaning or contradictory. (*DuBois v. Workers' Comp.*

opportunity for rebuttal. In response to the WCJ's conclusion that evidence of a demand for payment was never submitted for trial, the court referred to a letter to the WCJ raising the issue in the WCAB's own file.

*Appeals Bd., supra,* 5 Cal.4th at p. 388; *Moyer v. Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d at p. 230.)

The plain meaning should be consistent with the statute's purpose, and harmonized within the statutory framework as a whole. (*DuBois v. Workers' Comp. Appeals Bd., supra,* 5 Cal.4th at p. 388; *Moyer v. Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d at p. 230.) Workers' compensation law is liberally construed with the purpose of extending benefits to industrially injured workers. (§ 3202; *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150].)

Finally, interpretation of a governing statute is ultimately a question of law for the reviewing court, even though the WCAB's construction is entitled to great weight unless clearly erroneous. (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197].)

## II. *Section 4650 Is Applicable*

### A. *The Plain Meaning of Section 4650, Subdivision (b).*

 Section 4650, subdivision (b) expressly provides that PD payments begin only within 14 days after the date of the last payment of TD. The logical implication is that payment of TD must occur before payment of PD is owed under section 4650, subdivision (b), and consequently before any increase for late PD is due under section 4650, subdivision (d). This result, however, should be harmonized with the purpose of the statute as a whole, and workers' compensation law.

### B. *The Purpose of Section 4650.*

The legislative history indicates that the purpose of enacting the changes to section 4650 was to promote prompt payment of benefits and certainty of timing. The new legislation also included increased compensation for late payments as an incentive, apart from the increased compensation for unreasonable refusal or delay under section 5814. (*Rhiner v. Workers' Comp. Appeals Bd., supra,* 4 Cal.4th at p. 1227; *Mote v. Workers' Comp. Appeals Bd., supra,* 56 Cal.App.4th at p. 910.)

Prior to the reform legislation of 1989, section 4650 required that if the injury caused PD, payment was to be made "on the fourth day after the injury becomes permanent or the date of the last payment for temporary

disability, whichever date first occurs."[10] Part of the legislative change in section 4650, subdivision (b) omitted the option of paying PD once permanent and stationary status is achieved.

This does not necessarily mean the Legislature intended that TD precede PD before prompt payment of PD is required. The change is consistent with an uninterrupted flow of timed benefits during the transition from TD to PD, by eliminating the other option of when payment is due. Furthermore, determining the permanent and stationary date is often uncertain, as it is not uncommon for medical opinions regarding an injured worker's status to vary.

In addition, former section 4651 provided that payments of TD or PD were to be made not less frequently than twice each month, except by order of the WCAB. This chronology of benefits was essentially recodified in section 4650, subdivision (c), which states: "Payment of temporary or permanent disability indemnity subsequent to the first payment shall be made as due every two weeks on the day designated with the first payment." Section 4650, subdivision (c) is further substantiation of the Legislature's purpose, since it provides for payment of continuing TD or PD at regular intervals.

C. *Statutory Goals Are Served by Applying Section 4650, Subdivisions (c) and (d).*

The language of section 4650, subdivision (c) provides that subsequent PD payments every two weeks begin directly after the first payment of PD, rather than after the last payment of TD as in section 4650, subdivision (b). It follows that subsequent PD payments are contingent upon a payment of PD and not TD, and section 4650, subdivision (c) is applicable, even if TD is not paid. Late subsequent PD payments under section 4650, subdivision (c) are therefore subject to the increased compensation provisions of section 4650, subdivision (d), which expressly applies to all payments under section 4650.

Applying section 4650 to subsequent PD payments but not to the initial payment of PD, when TD is not paid, is consistent and in harmony with statutory language and goals. When TD is not involved, payment of PD is typically owed following the date permanent and stationary status is achieved. (*Ritchie v. Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1179-1180 [29 Cal.Rptr.2d 722].) As stated previously, the permanent

---

[10]The reference to becoming "permanent" refers to the date the industrial injury becomes permanent and stationary. (See *ante*, fn. 6.)

and stationary date is often uncertain. However, once the initial payment of PD is made, the timing of subsequent PD becomes certain when payment is required every two weeks thereafter under section 4650, subdivision (c).

Therefore, the WCAB must determine the amount of subsequent PD in the October 28, 1998, payment of $2,730, and then apply section 4650, subdivisions (c) and (d) to that amount. In addition, there was another payment of PD on January 13, 1999, for $2,004.25. Although the record indicates the period covered was from November 17, 1998, through January 16, 1999, and payment followed Dr. Freed's November 17, 1998, report, it is not entirely clear this was subsequent PD paid pursuant to the hearing loss. This also should be addressed by the WCAB.

### D. The Claim Form Does Not Alter the Result.

#### 1. Gangwish was denied due process.

In this case the WCAB rejected the WCJ's reasons and introduced its own rationale for the decision, that there was no evidence the claim form preceded the payment of PD by 14 days as required by section 4650, subdivision (d). Gangwish complains he was denied the opportunity for rebuttal, which violated due process. Gangwish is correct.

In *Rucker v. Workers' Comp. Appeals Bd., supra,* 82 Cal.App.4th at pages 157-158, the Court of Appeal found due process violated when the WCJ's amended decision was based on a completely different theory than presented by the parties, without affording a chance for rebuttal. Gangwish was provided even less opportunity since the WCAB, rather than the WCJ, established the new grounds. Accordingly, this basis alone is reason for reversal.

#### 2. More than 14 days elapsed after the claim form was submitted.

The WCAB found there was no showing that the claim form had been submitted to the City prior to or within 14 days under section 4650, subdivision (d), because the claim form had not been offered into evidence. This reasoning is not supported by the record, and further demonstrates why an opportunity for rebuttal is necessary.

In *Rucker v. Workers' Comp. Appeals Bd., supra,* 82 Cal.App.4th at pages 156-157, a letter written by the petitioner to the WCJ, which concerned issues for trial and was contained in the WCAB's file, was considered part of the record by the Court of Appeal.

In this case the claim form is also part of the WCAB's file. In addition, the claim form is an official form under section 5401, which triggers certain liabilities and obligations, including those under section 4650.[11] Clearly, the claim form is part of the record.

Furthermore, the claim form was part of the jurisdictional and procedural documents date-stamped as received by the WCAB on October 6, 1998, four days after mailing. There is no reason to find that Garcia did not receive the claim form at about the same time, which, along with mailing, was more than 14 days before the October 28, 1998, payment of PD occurred. Garcia testified the hearing loss application for adjudication of claim had been received when she paid PD, and the City responded on October 13, 1998, to Gangwish's other letter of October 2, 1998. Thus, the uncontroverted record establishes the claim form requirements of section 4650, subdivision (d) and section 5401, subdivision (c) were satisfied. Therefore, it is unnecessary for us to decide whether the City should have provided a claim form earlier or is estopped.

### III. *Nonpayment Was Not Unreasonable Under Section 5814*

It is well settled that the unreasonable delay or refusal required for a 10 percent increase in compensation under section 5814 occurs when there is no genuine doubt benefits are owed from a medical or legal standpoint. (*Kerley v. Workmen's Comp. App. Bd., supra,* 4 Cal.3d at pp. 227, 230.) In *Kerley v. Workmen's Comp. App. Bd.,* delaying payment of ascertainable PD prior to an award was found unreasonable under section 5814, which was the reason the WCJ awarded penalty in this case. We note that incentive for prompt payment is present under section 5814. But much greater certainty of timing is achieved by requiring payment of subsequent PD every two weeks pursuant to section 4650, subdivision (c).

We find the City had reasonable doubt from a legal standpoint in regards to section 4650, since we agree that under the statutory language the initial payment of PD is not subject to section 4650, subdivisions (b) and (d) when TD is not paid. In addition, our conclusion that subsequent PD payments are subject to section 4650 appears to be of first impression.

Furthermore, it is of no consequence Garcia indicated a section 4650 increase was not paid because she thought a 1984 injury was involved. She

---

[11]Under section 5401, subdivision (c): "The claim form shall be filed with the employer prior to the injured employee's entitlement to late payment supplements under subdivision (d) of Section 4650, or prior to the injured employee's request for a medical evaluation under Section 4060, 4061, or 4062. Filing of the claim form with the employer shall toll, for injuries occurring on or after January 1, 1994, the time limitations set forth in Sections 5405 and 5406 until the claim is denied by the employer or the injury becomes presumptively compensable pursuant to Section 5402."

also testified at trial that under section 4650, subdivision (b) PD is to be paid within 14 days of cessation of TD. This satisfies the City's burden of proof under section 5814.

## IV. DISPOSITION

The decision of the WCAB in regards to section 4650 is annulled and the matter is remanded for further proceedings consistent with this opinion.

Croskey, J., and Alrich, J., concurred.